1    Lauren M. Hausman (CA Bar No. 349514)
**COPYCAT LEGAL PLLC**
2    113 N San Vicente Blvd
Suite 232
3    Beverly Hills, CA 90211
T: (877) 437-6228
4    E: lauren@copycatlegal.com

5
Jonathan Alejandrino (*pro hac vice*)
6    **COPYCAT LEGAL PLLC**
3111 N. University Drive
7    Suite 301
Coral Springs, FL 33065
8    T: (877) 437-6228
E: jonathan@copycatlegal.com
9

10    Attorneys for Plaintiff
ELIZABETH WATERMAN
11

12
IN THE UNITED STATES DISTRICT COURT
13    FOR THE CENTRAL DISTRICT OF CALIFORNIA

14

15    ELIZABETH WATERMAN,          Civil Action No. 2:24-cv-04802-AB-AJR

16          Plaintiff,          **FIRST AMENDED COMPLAINT**

17    v.

18    TIKTOK INC.,

19

20          Defendant.

21

22

23

24

25

Plaintiff Elizabeth Waterman ("Plaintiff") sues TikTok, Inc. ("Defendant"), and alleges as follows:

### THE PARTIES

1.      Plaintiff is an individual who is a citizen of the State of California residing in the State of California.

2.      Defendant is a corporation organized and existing under the laws of the State of California with its principal place of business located at 5800 Bristol Parkway, Suite 100, Culver City, CA 90230. Defendant's agent for service of process is 1505 Corporation CSC – LAWYERS INCORPORATING SERVICE, 2710 Gateway Oaks Drive, Sacramento, CA 95833.

### JURISDICTION AND VENUE

3.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

4.       This Court has personal jurisdiction over Defendant because it maintained sufficient minimum contacts with this State such that the exercise of personal jurisdiction over it would not offend traditional notions of fair play and substantial justice.

5.      Venue properly lies in this district pursuant to 28 U.S.C. § 1400(a) because Defendant or its agents reside or may be found in this district.  "The Ninth Circuit has interpreted Section 1400(a) to mean that venue is proper in any judicial

district in which the defendant would be amenable to personal jurisdiction." <u>Righthaven LLC v. Inform Techs., Inc.</u>, No. 2:11-CV-00053-KJD-LRL, 2011 U.S. Dist. LEXIS 119379, at *8 (D. Nev. Oct. 14, 2011) (citing <u>Brayton Purcell LLP v. Recordon & Recordon</u>, 606 F.3d 1124, 1128 (9th Cir. 2010)). Venue is thus proper in this District because personal jurisdiction exists over Defendant in this District.

## **FACTS**

### **I.     Plaintiff's Business**

6.     Plaintiff is an accomplished American photographer and director based in Los Angeles, CA that holds a Bachelor of Arts degree in Fine Art from the University of Southern California.

7.     Plaintiff discovers sexuality, portraits, sex work, and obsessions of performance artists (see <u>https://elizabethwaterman.com/</u>).   Her style has been depicted as mutually transformative and transcendent.

8.     Plaintiff's photographic work has been featured in performances at the Wallplay (NYC), old Limelight Church/Jue Lan Club (NYC), and Olson-Irwin (Sydney), auctioned on Artnet.com, and exhibited on L'Oeil de La Photographie.com.

9.     Plaintiff also has an extensive editorial and commercial portfolio. Her editorial work has been published in *The British Journal of Photography*, *The Los*

*Angeles Times*, and *The Huffington Post*. Plaintiff's commercial clientele includes

fashion designers Marc Jacobs and Elie Tahari as well as *MS Magazine*.

10.    Currently, Plaintiff is exhibiting imageries from her 2021 sold-out

hardcover, MONEYGAME, that features black and white and color photographs

from her five-year venture into the sex work and stripper industry, as well as her

editorial text.

## II.    The Work at Issue in this Lawsuit

### *The First Photograph*

11.    In 2018, Plaintiff created a professional photograph of a stripper

performing at Club W titled "146_ClubW_August2018_321" (the "First

Photograph"). A copy of the First Photograph is displayed below:



12.     The First Photograph was registered by Plaintiff with the Register of

Copyrights on February 25, 2019 and was assigned Registration No. VAu 1-348-

543. A true and correct copy of the Certificate of Registration pertaining to the

First Photograph is attached hereto as **Exhibit "A."**

*The Second Photograph*

13.     In 2019, Plaintiff created a professional photograph of a stripper's

legs in white heels standing on money titled "176_CrazyGirls_181-Edit" (the

"Second Photograph").  A copy of the Second Photograph is displayed below:



14.     The Second Photograph was registered by Plaintiff with the Register

of Copyrights on July 30, 2019 and was assigned Registration No. VA 1-366-084.

A true and correct copy of the Certificate of Registration pertaining to the Work is

attached hereto as **Exhibit "B."**

15.    The First Photograph and Second Photograph are collectively referred

to herein as the "<u>Work</u>."

16.    Plaintiff is the owner of the Work and has remained the owner at all

times material hereto.

**II.    Defendant's Unlawful Activities**

17.    Defendant is an online social media company focused on short-form

video hosting services.

18.    Defendant hosts user-submitted videos through its social media app

(e.g.,    https://apps.apple.com/us/app/tiktok/id835599320)    and    website

(https://www.tiktok.com/).

19.    On multiple dates after each photograph comprising the Work was

registered, one or more of Defendant's users caused each photograph comprising

the Work to be displayed/published on Defendant's social media app/website

platform.

20.    A true and correct copy of screenshots of Defendant's website,

displaying the copyrighted Work, is attached hereto as **Exhibit "C."**

21.    Following discovery of the photographs comprising the Work on

Defendant's website/social media app, Plaintiff fully complied with 17 U.S.C. §

512 by sending multiple Digital Millennium Copyright Act (the "DMCA")

takedown notices to Defendant through its designated agent.

22.     Notwithstanding Plaintiff's multiple attempts (over a period of

months) to get Defendant to take down the unauthorized use of the Work,

Defendant failed and/or refused to remove the Work from its website/social media

app.

23.     All conditions precedent to this action have been performed or have

been waived.

### COUNT I – VICARIOUS COPYRIGHT INFRINGEMENT

24.     Plaintiff re-alleges and incorporates paragraphs 1 through 23 as set

forth above.

25.     Each photograph comprising the Work is an original work of

authorship, embodying copyrightable subject matter, that is subject to the full

protection of the United States copyright laws (17 U.S.C. § 101 *et seq.*).

26.     Plaintiff owns a valid copyright in each photograph comprising the

Work, having registered the Work with the Register of Copyrights and owning

sufficient rights, title, and interest to such copyright to afford Plaintiff standing to

bring this lawsuit and assert the claim(s) herein.

27.     As a result of Plaintiff's reproduction, distribution, and public display

of the Work, one or more of Defendant's users had access to the Work prior to its

own reproduction, distribution, and public display of the Work on Defendant's application/website platform.

28.     Such user(s) reproduced, distributed, and publicly displayed the Work without authorization from Plaintiff.

29.     By its actions, such user(s) infringed and violated Plaintiff's exclusive rights in violation of the Copyright Act, 17 U.S.C. § 501, by reproducing, distributing, and publicly displaying the Work for its own commercial purposes.

30.     The Ninth Circuit has explained that one "infringes vicariously by profiting from direct infringement while declining to exercise a right to stop or limit it." Perfect 10, Inc. v. Amazon.com, Inc., 508 F.3d 1146, 1173 (9th Cir. 2007). The plaintiff must establish that the defendant exercises the requisite control over the direct infringer and that the defendant derives a direct financial benefit from the direct infringement. Id. A defendant exercises control over a direct infringer when he has both a legal right to stop or limit the directly infringing conduct, as well as the practical ability to do so. BackGrid USA, Inc. v. Twitter, Inc., No. CV 22-9462-DMG (ADSx), 2024 U.S. Dist. LEXIS 103090, *13 (C.D. Cal. June 7, 2024) (denying a Motion to Dismiss claims for direct, contributory, and vicarious infringement).  The Ninth Circuit has found that it is sufficient to allege that the defendant had the ability to identify and remove the

infringing work. See <u>Stross v. Zillow Inc</u>., No. 2:21-cv-01489-RAJ-BAT, 2022

U.S. Dist. LEXIS 147735, *21 (W.D. Wash. June 21, 2022) ("[I]t is sufficiently

alleged that Zillow had the technical ability to screen or identify the Works based

on the URLs included in the DMCA Takedown Notice").

31.    Here, Plaintiff sent Defendant multiple DMCA takedown notices that

fully complied with 17 U.S.C. § 512.  Specifically, the DMCA takedown notices

set forth each of the required elements of 17 U.S.C. § 512(c)(3)(A)(i) – (vi),

including an electronic signature of Plaintiff, identification of each photograph at

issue, identification of the material claimed to be infringed (and providing a

specific URL to the infringing material), information reasonably sufficient to

permit Defendant to contact Plaintiff (her address, telephone number, and e-mail

address), a statement that Plaintiff had a good faith belief that use of the material

on Defendant's platform was not authorized by Plaintiff, and a statement that the

information in the notification was accurate and, under penalty of perjury, that

Plaintiff had an exclusive right being infringed.

32.    Plaintiff submitted such infringement notices via Defendant's own

website      (https://www.tiktok.com/legal/report/Copyright)      that      Defendant

established for submission of DMCA-related claims.  Plaintiff likewise submitted

the  notices  to  Defendant   via  e-mail  (Copyright@tiktok.com)  to  Defendant's

DMCA                  designated                  agent                  (see

https://dmca.copyright.gov/dmca/publish/history.html?search=tiktok&id=865aa3

b9cfc92633fac4f1457decfdcf) as an extra means of notifying Defendant.

33.    Defendant has the right to stop or limit infringement on its

application/website platform.  Indeed, Defendant publishes its policies with

respect to infringement on its application/website platform (at

https://support.tiktok.com/en/safety-hc/account-and-user-safety/copyright),

noting that Defendant has adopted a policy of terminating user accounts if found

to be repeated infringers.

34.    Of note, Defendant provides users with instructions on how to report

intellectual property infringement and what information will be required to do so.

Moreover, Defendant provides different ways to report infringements (in-app

reporting and submission of an online form via the website).

35.    Defendant received a direct financial benefit from its user(s)'

infringement of the Work.  The unauthorized use/display of the Work on

Defendant's platform (mobile phone application and website) acted as a draw for

other customers/end-users to engage with Defendant. Defendant materially

benefited from the increased engagement. The rise in the number of users engaging

with Defendant's platform resulted in increased traffic on the above-mentioned

platform, leading to advertisements making additional impressions, and yielding

in-platform purchases. In-platform purchases (e.g., purchases made through the TikTok shop) consequently result in monies being paid to Defendant.

36.     Defendant's vicarious infringement was willful as it acted with actual knowledge or reckless disregard for whether its conduct infringed upon Plaintiff's copyright. Notably, Defendant itself utilizes a copyright disclaimer on its website ("© 2024 TikTok"), indicating that Defendant understands the importance of copyright protection and intellectual property rights and is actually representing that it owns each of the photographs published on its website.  See, e.g., Bell v. ROI Prop. Grp. Mgmt., LLC, No. 1:18-cv-00043-TWP-DLP, 2018 U.S. Dist. LEXIS 127717, at *3 (S.D. Ind. July 31, 2018) ("[T]he willfulness of ROI's infringement is evidenced by the fact that at the bottom of the webpage on which the Indianapolis photograph was unlawfully published appeared the following: 'Copyright © 2017.' By placing a copyright mark at the bottom of its webpage that contained Mr. Bell's copyrighted Indianapolis Photograph, Mr. Bell asserts ROI willfully infringed his copyright by claiming that it owned the copyright to everything on the webpage."); John Perez Graphics & Design, LLC v. Green Tree Inv. Grp., Inc., Civil Action No. 3:12-cv-4194-M, 2013 U.S. Dist. LEXIS 61928, at *12-13 (N.D. Tex. May 1, 2013) ("Once on Defendant's website, Defendant asserted ownership of Plaintiff's Registered Work by including a copyright notice at the bottom of the page. Based on these allegations, the Court finds Plaintiff has

sufficiently pled a willful violation….”).

37.     Additionally, Defendant is registered under the Digital Millennium Copyright Act ("DMCA") and thus, Defendant clearly understands that professional photography such as the Work is generally paid for and cannot simply be copied from the internet.

38.     Plaintiff has been damaged as a direct and proximate result of Defendant's infringement.

39.      Plaintiff is entitled to recover her actual damages resulting from Defendant's unauthorized use of the Work and, at Plaintiff's election (pursuant to 17 U.S.C. § 504(b)), Plaintiff is entitled to recover damages based on a disgorgement of Defendant's profits from infringement of the Work, which amounts shall be proven at trial.

40.     Alternatively, and at Plaintiff's election, Plaintiff is entitled to statutory damages pursuant to 17 U.S.C. § 504(c), in such amount as deemed proper by the Court.

41.     Pursuant to 17 U.S.C. § 505, Plaintiff is further entitled to recover its costs and attorneys' fees as a result of Defendant's conduct.

42.     Defendant's conduct has caused, and any continued infringing conduct will continue to cause, irreparable injury to Plaintiff unless enjoined by the Court.  Plaintiff has no adequate remedy at law.  Pursuant to 17 U.S.C. § 502,

Plaintiff is entitled to a permanent injunction prohibiting infringement of Plaintiff's

exclusive rights under copyright law.

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

a.  A declaration that Defendant has infringed Plaintiff's copyrights in the

Work;

b.  A declaration that such infringement is willful;

c.  An award of actual damages and disgorgement of profits as the Court deems

proper or, at Plaintiff's election, an award of statutory damages for willful

infringement up to $150,000.00 for each photograph comprising the Work;

d.  Awarding Plaintiff her costs and reasonable attorneys' fees pursuant to 17

U.S.C. § 505;

e.  Awarding Plaintiff interest, including prejudgment interest, on the foregoing

amounts;

f.  Permanently enjoining Defendant, its employees, agents, officers, directors,

attorneys, successors, affiliates, subsidiaries and assigns, and all those in

active concert and participation with Defendant, from directly or indirectly

infringing Plaintiff's copyrights or continuing to display, transfer, advertise,

reproduce, or otherwise market any works derived or copied from the Work

or to participate or assist in any such activity; and

g.  For such other relief as the Court deems just and proper.

## COUNT II – CONTRIBUTORY COPYRIGHT INFRINGEMENT

43.     Plaintiff re-alleges and incorporates paragraphs 1 through 23 as set

forth above.

44.     Each photograph comprising the Work is an original work of

authorship, embodying copyrightable subject matter, that is subject to the full

protection of the United States copyright laws (17 U.S.C. § 101 *et seq.*).

45.     Plaintiff owns a valid copyright in each photograph comprising the

Work, having registered the Work with the Register of Copyrights and owning

sufficient rights, title, and interest to such copyright to afford Plaintiff standing to

bring this lawsuit and assert the claim(s) herein.

46.     As a result of Plaintiff's reproduction, distribution, and public

display of the Work, one or more of Defendant's users had access to the Work

prior to its own reproduction, distribution, and public display of the Work on

Defendant's application/website platform.

47.     Such user(s) reproduced, distributed, and publicly displayed the

Work without authorization from Plaintiff.

48.     By its actions, such user(s) infringed and violated Plaintiff's

exclusive rights in violation of the Copyright Act, 17 U.S.C. § 501.

14

49.    One who, with knowledge of the infringing activity, induces, causes

or materially contributes to the infringing conduct of another may be liable as a

contributory infringer. See Ellison v. Robertson, 357 F.3d 1072, 1076. In other

words, a party may be held liable for contributory infringement if it "(1) has

knowledge of another's infringement and (2) either (a) materially contributes to

or (b) induces that infringement. BackGrid at *9 (C.D. Cal. June 7, 2024).  A

defendant who receives a compliant DMCA notice and fails to comply satisfies

the knowledge prong. Id.

50.    Here, Plaintiff sent Defendant multiple DMCA takedown notices that

fully complied with 17 U.S.C. § 512.  The information provided by Plaintiff was

sufficient for Defendant to identify the user(s) who infringed the Work.

Specifically, the DMCA takedown notices listed the Work infringed, the infringing

activity, and the location of the infringing activity on the Defendant's platform.

Upon receipt of the DMCA takedown notices, Defendant did in fact become aware

of the identity of the user(s) who infringed the Work.

51.    Notwithstanding these DMCA takedown notices, Defendant failed to

take any action to remove the Work. Defendant therefore had actual knowledge of

its user(s)' infringement of the Work.

52.     A plaintiff properly alleges the material contribution element if he can

show that a defendant could have taken simple measures to prevent further damage

to copyrighted works yet continued to provide access to infringing works. Stross

v. Meta Platforms, Inc., No. 2:21-cv-08023-MCS-AS, 2022 U.S. Dist. LEXIS

100689, *11 (C.D. Cal. Apr. 6, 2022); Umg Recordings, Inc. v. Grande Commc'ns

Networks, L.L.C., No. 23-50162, 2024 U.S. App. LEXIS 25505, at *56 (5th Cir.

Oct. 9, 2024) (affirming jury verdict of contributory infringement against ISP that

received DMCA notices with respect to the IP addresses of its infringing users but

failed to take any action to suspend and/or remove services to those users).

53.     Defendant could have taken simple measures to prevent further

damage to copyrighted works yet continued to provide access to infringing works.

Defendant received multiple, fully compliant DMCA takedown notices yet took

no action to remove the infringing material from its application/website platform.

54.     Defendant is a multinational corporation with in-house legal staff.

Defendant easily could have dedicated sufficient resources to monitoring DMCA

takedown notices and taking timely action to remove infringing conduct, yet

Defendant took no such simple measures.

55.     Defendant's contributory infringement was willful as it acted with actual knowledge or reckless disregard for whether its conduct infringed upon Plaintiff's copyright. Notably, Defendant itself utilizes a copyright disclaimer on its website ("Copyright © 2024 Tik Tok"), indicating that Defendant understands the importance of copyright protection and intellectual property rights and is actually representing that it owns each of the photographs published on its website. See, e.g., Bell v. ROI Prop. Grp. Mgmt., LLC, No. 1:18-cv-00043-TWP-DLP, 2018 U.S. Dist. LEXIS 127717, at *3 (S.D. Ind. July 31, 2018) ("[T]he willfulness of ROI's infringement is evidenced by the fact that at the bottom of the webpage on which the Indianapolis photograph was unlawfully published appeared the following: 'Copyright © 2017.' By placing a copyright mark at the bottom of its webpage that contained Mr. Bell's copyrighted Indianapolis Photograph, Mr. Bell asserts ROI willfully infringed his copyright by claiming that it owned the copyright to everything on the webpage."); John Perez Graphics & Design, LLC v. Green Tree Inv. Grp., Inc., Civil Action No. 3:12-cv-4194-M, 2013 U.S. Dist. LEXIS 61928, at *12-13 (N.D. Tex. May 1, 2013) ("Once on Defendant's website, Defendant asserted ownership of Plaintiff's Registered Work by including a

copyright notice at the bottom of the page. Based on these allegations, the Court

finds Plaintiff has sufficiently pled a willful violation….").

56.    Additionally, Defendant is registered under the Digital Millennium

Copyright Act ("DMCA") and thus, Defendant clearly understands that

professional photography such as the Work is generally paid for and cannot simply

be copied from the internet.

57.    Plaintiff has been damaged as a direct and proximate result of

Defendant's contributory infringement.

58.    Plaintiff is entitled to recover her actual damages resulting from

Defendant's unauthorized use of the Work and, at Plaintiff's election (pursuant to

17 U.S.C. § 504(b)), Plaintiff is entitled to recover damages based on a

disgorgement of Defendant's profits from infringement of the Work, which

amounts shall be proven at trial.

59.    Alternatively, and at Plaintiff's election, Plaintiff is entitled to

statutory damages pursuant to 17 U.S.C. § 504(c), in such amount as deemed

proper by the Court.

60.    Pursuant to 17 U.S.C. § 505, Plaintiff is further entitled to recover her

costs and attorneys' fees as a result of Defendant's conduct.

61.    Defendant's conduct has caused, and any continued infringing conduct will continue to cause, irreparable injury to Plaintiff unless enjoined by the Court.  Plaintiff has no adequate remedy at law.  Pursuant to 17 U.S.C. § 502, Plaintiff is entitled to a permanent injunction prohibiting infringement of Plaintiff's exclusive rights under copyright law.

**WHEREFORE,** Plaintiff demands judgment against Defendant as follows:

a.  A declaration that Defendant has vicariously infringed Plaintiff's copyrights in the Work;

b.  A declaration that such contributory infringement is willful;

c.  An award of actual damages and disgorgement of profits as the Court deems proper or, at Plaintiff's election, an award of statutory damages for each photograph comprising the Work;

d.  Awarding Plaintiff her costs and reasonable attorneys' fees pursuant to 17 U.S.C. § 505;

e.  Awarding Plaintiff interest, including prejudgment interest, on the foregoing amounts;

f.  Permanently enjoining Defendant, its employees, agents, officers, directors, attorneys, successors, affiliates, subsidiaries and assigns, and all those in

active concert and participation with Defendant, from directly or indirectly

infringing Plaintiff's copyrights or continuing to display, transfer, advertise,

reproduce, or otherwise market any works derived or copied from the Work

or to participate or assist in any such activity; and

g.  For such other relief as the Court deems just and proper.

Dated: November 20, 2024.          **COPYCAT LEGAL PLLC**

                                   By: /s/ Lauren Hausman
                                       Lauren Hausman, Esq.
                                       Jonathan Alejandrino, Esq.
                                       Attorneys for Plaintiff
                                       Elizabeth Waterman

## **CERTIFICATE OF SERVICE**

I hereby certify that on November 20, 2024, I electronically filed the

foregoing document with the Clerk of the Court using CM/ECF, which will

electronically serve all counsel of record.

                                   /s/ Lauren M. Hausman
                                   Lauren M. Hausman, Esq.